UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

JAMES A. COCCIA and                 :    BK No. 00-14240
ROBERTA G. COCCIA                        Chapter 7
              Debtors               :


BARRY DOHERTY and MONIQUE DOHERTY    :
              Plaintiffs
v.                                  :    A.P. No. 05-1061


JAMES A. COCCIA                     :
              Defendant
- - - - - - - - - - - - - - - - - -x


### DECISION AND ORDER DENYING PLAINTIFFS' COMPLAINT TO HAVE THEIR CLAIM DETERMINED NONDISCHARGEABLE

APPEARANCES:

    Jeffrey C. Blake, Esq.
    Attorney for Debtors/Defendant
    1136 Main Street
    P.O. Box 782
    Wyoming, Rhode Island 02898

    Dianne L. Izzo, Esq.
    Attorney for Plaintiffs
    GORHAM & GORHAM
    25 Danielson Pike
    P.O. Box 46
    North Scituate, Rhode Island 02857


**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 00-14240; A.P. No. 05-1061

Heard on the Complaint of Barry and Monique Doherty seeking a determination that their claim against the Debtor, James Coccia, is nondischargeable under 11 U.S.C. § 523(a)(6). The Dohertys complain that Coccia or his agents willfully and maliciously damaged their motor vehicle while towing it, and did further damage thereafter while the vehicle was in Coccia's possession. Coccia denies the allegations and asks that the Complaint be dismissed on the ground that the Plaintiffs have failed to satisfy the requirements of § 523(a)(6). For the reasons discussed below, I find for the Plaintiffs on the ground that the credible evidence has fallen far short of the allegations. Accordingly, the relief sought in this case is denied.

## BACKGROUND

This dispute began more than ten years ago, and this long lapse in time may be partly the cause of the great disparity in the evidence and the inadequacy of the Plaintiffs' proof. In September 1995, Monique Doherty was stopped by the North Providence Police and her 1989 Volkswagen Jetta was impounded because of unpaid excise taxes. C&D Towing, a business owned and operated by Coccia, was engaged by the North Providence police, and the vehicle was towed to his outside storage facility on Mineral Spring Avenue in North Providence, where it remained for over a year because the Dohertys were unable to pay the taxes and storage and towing fees.

1

BK No. 00-14240; A.P. No. 05-1061

Adding to their problems, the Doherties failure to pay property taxes resulted in the suspension of the car registration, and as we all know, the only way to retrieve their car and reinstate the registration was to pay all of the outstanding taxes. They finally did so in July 1996 (*See* Exhibit A), and by that time they were faced with almost one year of storage fees due Coccia and C&D.

To assist in recovering their vehicle, the Doherties enlisted the help of their own prior bankruptcy counsel, Peter Berman, Esq., and the North Providence Police. The Doherties agreed to pay Coccia $3,000 in storage fees and Coccia agreed to deliver the vehicle to the Doherties at the North Providence Police Station. As scheduled, the exchange took place on October 29, 1996. In February 1998, twenty-seven months later, the Doherties filed suit against Coccia in state court, alleging, *inter alia,* that while their car was in Coccia's possession for 416 days, the vehicle odometer reading increased by over 12,000 miles, that while it was "converted to his private use," he caused additional damage to the car in excess of $6,000. Plaintiff's Exhibit 1-B, p 3. In December 2000, Coccia filed a Chapter 7 petition with this Court, but failed to list the Doherties as creditors. In April 2004, unaware of the bankruptcy, the Doherties obtained a state court default judgment against Coccia in the amount of $19,907, but when they sought to enforce the judgment against Coccia, the bankruptcy

2

BK No. 00-14240; A.P. No. 05-1061

case was reopened and the Doherties were added as creditors.  As a condition of the case being reopened, the Doherties were allowed to file a dischargeability complaint against Coccia, and in September 2005, the Doherties filed the instant Complaint seeking a determination that their claim is nondischargeable under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code.

## DISCUSSION

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  The U.S. Supreme Court announced the standard for determining whether a debt is nondischargeable under 523(a)(6) in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), stating:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply " the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

3

BK No. 00-14240; A.P. No. 05-1061

523 U.S. at 61-62.  The *Geiger* decision left a few unanswered questions, including whether the term "willful" encompasses acts that are done with the intention of causing harm, as well as those that are known by the actor to be "substantially certain to cause injury."  *See McAlister v. Slosberg* (*In re Slosberg*), 225 B.R. 9, 17-19 (Bankr. D. Me. 1998).  Another issue left open is what meaning should be ascribed to the statutory term "malicious"?  *Id*. at 19-20.

Judge Haines in *Slosberg* addressed these questions, and as to the element of *willfulness*, he adopted the "substantially certain" analysis, noting that most courts, post *Geiger,* were taking the approach that "a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)."  *Id*. at 18.  In defining *malicious*, Judge Haines noted that while the terms *willful* and *malice* share common elements, such as requiring that the act be intentional, both still "must have independent significance."  *Id*. at 19-20.  Looking to pre-*Geiger* case law, he concluded that:

> Section 523(a)(6) malice can have meaning,
> meaning that adds something to the statute's
> willfulness requirement:  A showing of malice
> requires a showing that the debtor's willful,
> injurious conduct was undertaken without just
> cause or excuse.

*Id*. at 19-22.

4

BK No. 00-14240; A.P. No. 05-1061

Before applying the law to the facts of the instant case, we must first deal with the Plaintiffs' very tardy argument that they should prevail under the principle of collateral estoppel.  It is well settled that collateral estoppel can apply in discharge exception proceedings.  *See Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991).  "Where the issue was litigated under state law, the law of the state that issued the judgment ... determines the preclusive effect of the state court judgment." *Read & Lundy, Inc. v. Brier* (*In re Brier*), 274 B.R. 37, 42 (Bankr. D. Mass. 2002). For collateral estoppel to apply under Rhode Island law, three factors must be present:  "there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding."  *Casco Indem. Co. v. O'Connor*, 755 A.2d 779 (R.I. 2000), *quoting Commercial Union Insurance Company v. Pelchat*, 727 A.2d 676, 680 (R.I. 1999).

An important purpose of collateral estoppel is to "encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981).  The Plaintiffs raised their collateral estoppel argument about as late as a litigant can — at the close of all the evidence, after a full

5

BK No. 00-14240; A.P. No. 05-1061

trial on the merits.  This argument should have been presented long before the first witness was called, preferably as a pre-trial dispositive motion, and no reason has been offered for not doing so.  To entertain the argument in this case would completely overlook the underlying principle of the doctrine, i.e., to promote judicial economy.  *See Davis v. West Community Hosp.*, 786 F.2d 677, 682 (5th Cir.), *reh'g denied*, 790 F.2d. 890 (5th Cir. 1986).  Because it was thrown in as an obvious afterthought, I will not apply or entertain the doctrine in this case.

Additionally, even if the issue were raised timely by the Plaintiffs, judgment would not have been automatic.  The Plaintiffs argue that the default judgment based on their conversion claim would have carried the day under Section 523(a)(6).  I disagree. Section 523(a)(6) requires more than merely *conversion.*   The Supreme Court has stated:  "There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception.  ...  But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances."  *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934).  Negligent or reckless acts will not suffice.  *See Geiger*, 523 U.S. at 63-64.  On this record, willful and malicious conduct has not been established.

6

BK No. 00-14240; A.P. No. 05-1061

Finally, on the merits, the Plaintiffs must prove their case by a preponderance of the evidence, *see Grogan*, 498 U.S. at 661, keeping in mind that "exceptions to discharge are to be narrowly construed in favor of the debtor." *Weeden v. Monahan* (*In re Monahan*), 125 B.R. 697, 699-700 (Bankr. D.R.I. 1991). The evidence in this case is that Mr. Coccia had the Plaintiffs' vehicle towed to his unlocked storage lot in North Providence. Plaintiffs testified that when it was impounded in September 1995, the vehicle was in very good condition and that it had been driven approximately 76,000 miles. Mrs. Doherty who testified first, said that her husband maintained a computer log as a means of computing gasoline consumption and that the log would accurately establish the before and after mileage. When Mr. Doherty testified, however, he produced no mileage log, gave no explanation for its absence, and merely stated that the car was driven approximately 12,000 miles per year for the six years prior to September 1995.

The only other evidence introduced at trial to establish mileage as of September 2005 was a computer copy of a Jiffy Lube service receipt (Exhibit 2). Upon examination this document does more harm to the Plaintiffs' case than any help it might possibly confer. It identifies a 1989 Volkswagen Jetta with Coccia's registration number being serviced on October 29, 1995 — some 50 days after the Plaintiffs' vehicle was impounded and towed. The

7

BK No. 00-14240; A.P. No. 05-1061

receipt does not contain a VIN number, a color, or anything to establish that the vehicle serviced was the Plaintiffs' vehicle. The computer printout shows that the mileage on the service date was 80,783, which is approximately 5,800 miles more than the Plaintiffs say were on the vehicle when it was towed.  Standing alone, this exhibit is unreliable, and insufficient to establish a connection between the serviced car and the Plaintiffs' 1989 VW Jetta, especially given the ubiquitous nature of that type vehicle. In retrospect, if the introduction of this exhibit had been objected to, it would have been excluded.

    In addition, no persuasive evidence was presented by the Plaintiffs as to the alleged "like new" condition of their car at the time it was impounded, and although Mr. Coccia's colorful description of the condition and odor of the car smacked of exaggeration, it also took the edge off the Plaintiffs' contention that their car was near perfect.  The Plaintiffs did supply some alleged repair "receipts" dated after they got their car back, but most of these turned out to be "estimates", with few for work actually performed on the vehicle.  Because the Plaintiffs had the help of their former bankruptcy counsel and the North Providence Police to effectuate the return of their vehicle, this Court is satisfied that if the vehicle were driven the many miles the Dohertys allege, or if it suffered anything close to the damage

8

BK No. 00-14240; A.P. No. 05-1061

claimed, that the Dohertys would not have completed the exchange on the stated terms that evening at the North Providence Police Department, or handed Mr. Coccia $3,000 in cash!

The only evidence that even resembled a willful and malicious injury to the vehicle was the testimony of Mrs. Doherty that a man named "Moose", who allegedly worked for Coccia, pulled the antenna off of her car, in her presence. Later in her testimony, however, Mrs. Doherty remembered and conceded that the incident involving Moose occurred *after* she had regained possession of the car, during an encounter unrelated to this dispute.

At best, the Plaintiffs have shown that Coccia may have been negligent, and perhaps even reckless, to store the vehicle in an unlocked facility, but they clearly have not established that Coccia caused willful and malicious damage to their property, as required under Section 523(a)(6). Accordingly, the Plaintiffs' Complaint is DENIED and DISMISSED.

Enter Judgment consistent with this order.

Dated at Providence, Rhode Island, this    3rd    day of October, 2006.

_____
Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 10/3/2006

9